# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
### File No. 5:09-CV-00352-F

| | | |
|---|---|---|
| THE PATRICK NEIGHBORS LAW FIRM, | ) | |
| P.C. and PATRICK E. NEIGHBORS, | ) | **DEFENDANT HIGHLAND** |
| | ) | **CAPITAL MANAGEMENT, L.P.'S** |
| **Plaintiffs,** | ) | **RESPONSE TO PLAINTIFFS'** |
| | ) | **MOTION FOR SUMMARY** |
| **vs.** | ) | **JUDGMENT PURSUANT TO FED.** |
| | ) | **R. CIV. P. 56 AND MOTION FOR** |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | **CONTINUANCE PURSUANT TO** |
| and HYSKY COMMUNICATIONS, L.L.C., | ) | **FED. R. CIV. P. 56(f)** |
| | ) | |
| **Defendants.** | ) | |

COMES NOW Defendant Highland Capital Management, L.P. ("Highland") and files this Response to Plaintiffs' Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56, and this Motion for Continuance Pursuant to FED. R. CIV. P. 56(f) and would respectfully show the Honorable Court as follows:

## I.
## GROUNDS FOR DENYING SUMMARY JUDGMENT

Plaintiffs' Motion for Summary Judgment on their claims for breach of contract, *quantum meruit*, and quasi-contract should be denied on the following grounds:

**1. HySky, not Highland, owes Plaintiffs' reasonable legal fees, if any.**

HySky, not Highland, agreed to pay Plaintiffs' legal fees. Plaintiffs had an express contract with HySky requiring payment of fees. HySky paid such fees. In return, Plaintiffs provided services to HySky. The evidence shows that Highland neither agreed to pay Plaintiffs, nor ever actually paid Plaintiffs for any legal services.

-1-

**2. Plaintiffs only asserted Highland owed their fees after HySky became unable to pay.**

Plaintiffs originally claimed their fees from HySky's due diligence escrow account. HySky's board refused to pay the fees and HySky's finances deteriorated. Plaintiffs then changed their allegations to assert that Highland was a co-obligee on HySky's debt. However, HySky's inability to pay does not transfer the debt to Highland.

**3. Plaintiffs' claims for *quantum meruit* and quasi-contract against Highland are precluded by the express contract between HySky and Plaintiffs for payment for the same legal services.**

As a matter of law, an express contract precludes an implied contract on the same matter. HySky expressly agreed to pay Plaintiffs' legal fees. This precludes an implied contract claim for the same fees against Highland.

**4. Discovery is necessary to determine the amount, value, and quality of the legal services allegedly provided by Plaintiffs.**

To date, no discovery has taken place in this matter. Discovery of Plaintiffs' written records and depositions of Plaintiffs' staff are necessary to determine how many hours Neighbors worked for HySky, the agreed billable rate for those hours, and Neighbors' qualifications to provide the complex legal services HySky required. Therefore the Court should stay ruling on the instant Motion subject to FED. R. CIV. P. 56(f).

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

This is an alleged breach of contract matter. Plaintiff Patrick E. Neighbors ("Neighbors") served as Acting General Counsel for HySky Communications, L.L.C. ("HySky") from December 2006 to March 2009. *See* Exhibit 1 (Affidavit of Clay Callan) at ¶ 5. During that

time, Highland was HySky's sole equity holder.[1]  *See id.* at ¶ 2.  Neighbors signed a retention letter on November 29, 2006 ("Retention Letter") with Highland indicating that he would not bill for his services until mutually agreed upon.  *See* <u>Exhibit 2(a)</u> (Affidavit of Isaac Leventon).  The Retention Letter makes no mention of "deferral" of fees or the agreed billing rate.  *See id.* Rather, this was left for further negotiation.  Ultimately, in September 2007, HySky agreed to pay for Neighbors' services as its Acting General Counsel.  *See* § III(B)(1) *infra.*  Neighbors continued to render services to HySky as Acting General Counsel for this entire time period.  *See id.*

HySky faced crisis in November and December 2008 as all the company's officers quit *en mass.  See* <u>Exhibit 1</u> at ¶¶ 3-4.  In this midst of this crisis, HySky's board members became concerned that Neighbors had become non-responsive, inattentive to detail, and unable to handle the complexity of HySky's legal issues.  *See id.* at ¶ 4.  HySky began to seek replacement counsel.  *See id.* at ¶ 5.  Shortly thereafter, on February 5, 2009, Neighbors asserted HySky had not paid him for his due diligence work from December 2006 – September 2007.  *See* <u>Exhibit 2(b)</u> (HySky Board of Managers Meeting Minutes of February 5, 2009).  Neighbors asserted that he should be paid $92,000 out of HySky's due diligence account.  *See id.*  When HySky did not pay him, Neighbors followed up with another request to HySky on March 1, 2009.  *See* <u>Exhibit 2(c)</u>.

HySky disputed the reasonableness of Neighbors' legal fees, and moved to replace Neighbors as counsel.  *See* <u>Exhibit 2(d)</u>.  Neighbors then asserted that his claim was now up to $131,530 because he had previously been "estimating from memory."  *See* <u>Exhibit 2(e)</u>.  HySky

---

[1]     Plaintiffs' Motion neither argues nor provides any evidence that the Court should disregard the corporate form and treat Highland and HySky as the same entity.  Highland points to HySky's organizational documents (*see* <u>Exhibit 2(w)</u>) and the correspondence provided *infra* to show that HySky had active, independent members.  At the Court's request, Highland will provide additional evidence that the corporate form was maintained in all respects.

sought to negotiate a settlement to no avail.  *See* <u>Exhibit 2(f)</u>.  During this time, HySky's financial condition continued to deteriorate, resulting in HySky declaring bankruptcy on August 13, 2009.  *See* <u>Exhibit 3</u> (HySky's Voluntary Petition for Bankruptcy).

Neighbors, presumably with knowledge of HySky's severe financial difficulties, searched for another deep pocket to pay his fees.  After HySky rebuffed his request for fees, Neighbors asserted that Highland also owed his fees.  Plaintiffs, including both Neighbors and his firm, thereafter filed suit against HySky and Highland.  *See* Plaintiffs' Original Complaint.  To date, Plaintiffs have neither submitted a proposed discovery plan to the Court, nor have they propounded written discovery to Highland.  Rather, Plaintiffs simply moved for summary judgment alleging no disputed issues of fact remain.  However, the Court should deny Plaintiffs' Motion for Summary Judgment because evidence indicates that Highland does not owe Plaintiffs' alleged legal fees.

### III.
### STANDARD FOR DENYING SUMMARY JUDGMENT

"A district court may only award summary judgment to the extent there are no disputed issues of material fact." *MM, a minor, v. Sch. Dist. of Greenville County*, 303 F.3d 523, 531, fn.12 (4th Cir. 2002) (*citing* FED. R. CIV. P. 56(c)).  In ruling upon a motion for summary judgment, the Court should view the evidence by drawing all inferences in the light most favorable to the non-moving party.  *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991).

### IV.
### RESPONSE TO SUMMARY JUDGMENT

**A.    HySky, Not Highland, Owes Plaintiffs' Alleged Legal Fees.  Plaintiffs' Contract Claims Should be Denied.**

Assuming *arguendo* that Plaintiffs' alleged legal fees are legitimate, such fees are owed by HySky, and not by Highland because (1) HySky, not Highland, agreed to pay Neighbors'

fees, (2) Neighbors rendered his services to HySky, not to Highland, and (3) Neighbors originally asserted that HySky owed his entire fee, and only later changed his story when it became apparent that HySky was unable to pay. Therefore, a factual dispute exists which precludes summary judgment on Plaintiffs' First, Sixth, Eighth, and Ninth Causes of Action.

1.     **Evidence Indicates that HySky, not Highland, Agreed to Pay Neighbors' Legal Fees**

Evidence indicates that Highland neither agreed to pay Neighbors a billable rate of $350 per hour for his services rendered from December 2006 to September 2007, nor agreed to pay his bills on a deferred basis. *See* Plaintiffs' Exhibit 2 at ¶¶ 4-6. Rather, evidence indicates that Neighbors agreed to defer charges for his services until a later, unspecified time, at an unspecified rate. The evidence indicates that HySky, not Highland, actually agreed to pay Neighbors. HySky is the <u>only</u> party that agreed to pay Neighbors' fees at any time.

First, the Retention Letter states that "there shall be no attorney or legal fees charged for worked [*sic*] performed by this firm on your behalf until we shall mutually agree." *See* <u>Exhibit 2(a)</u>. Despite Plaintiffs' allegations, none of the written correspondence between Neighbors and Highland states that fees will be deferred or specify a billing rate. *See* <u>Exhibit 2(g)</u> (email correspondence regarding the Retention Letter between Neighbors and Niles Chura ("Chura"), a HySky board manager). In the absence of writing memorializing these terms, any oral agreement would have been contrary to the North Carolina Rules of Professional Conduct stating that "in a new client-lawyer relationship, [ ] a written understanding as to fees and expenses should be promptly established." N.C. Rule Prof. Conduct 1.5(b) and Cmt. 2.

Second, evidence indicates that Neighbors not only failed to establish the terms of payment with Highland in December 2006, but that such terms were still in negotiation with Chura, a member of HySky's board, as late as February 2007. Prior to Chura's request in

February 2007, Neighbors was not even tracking the billable hours he spent working for HySky. *See* Exhibit 2(h) (February 5, 2007 email exchange between Neighbors and Chura). Regarding Neighbors' billable hours, Chura indicated he would "present internally when the timing is right," to which Neighbors responded he would "have the proposal to [Chura] soon." *See id.* In the absence of a final agreement, specifying who would pay, and how much they would pay, Neighbors still had not been agreed upon – certainly not by Highland.

Third, evidence indicates that during negotiation of a final agreement, HySky indicated that it would attempt to pay Neighbors for his due diligence services out of HySky's escrow account. *See* Exhibit 2(i). Neighbors raised no objection that Highland, not HySky, owed payment.

Fourth, evidence indicates that an agreement was reached whereby Neighbors would be paid $350 per hour, but that such agreement was made with HySky. *See* Exhibit 2(j) (email correspondence between Neighbors and HySky representatives). Chura indicated in August 2007 that Neighbors "has been working with HySky since the beginning of the year, acting as part-time GC." *See id.* Chura continued:

> We also need to discuss formalizing his arrangement with HySky. To date, he has not charged for his services and has worked and estimated 180 hours – he stopped counting at 90 on March 6th. Anyway, I had Jim D's approval to use Patrick (without comp) while in the due diligence phase.

*See id.* Neighbors endorsed this statement with a one word "Thanks" email." *See id.* Neighbors was then contacted in September 2007 by Chura to negotiate HySky's payment for Neighbors services. *See* Exhibit 2(k). On September 10, 2007, it was for the first time suggested that Neighbors' billing rate would be $350 per hour. *See id.* HySky would pay Neighbors. *See* Exhibit 2(l). Neighbors then accepted this offer, and started to draw a retainer. *See id.* Evidence

indicates that HySky, not Highland, paid Neighbors' retainer. *See* Exhibit 2(m) and 2(n) (HySky's 2007 General Ledger and First Quarter 2008 Summary of Legal Bills).

In sum, the evidence shows that Highland never agreed to pay Neighbors and that all negotiations went forward with the understanding that HySky owed payment to Neighbors. Neighbors and HySky negotiated such payment in September 2007, and HySky proceeded to pay Neighbors. This flatly contradicts' Plaintiffs' assertion that Highland admitted its payment obligations by paying Neighbors starting in October 2007. Rather, HySky maintained the relationship and paid Neighbors at the agreed rate.

Finally, even if Neighbors had a client relationship with Highland prior to September 2007, the Retention Letter, which was drafted by Neighbors, did not provide for Highland to pay for his services. *See* Exhibit 2(a). The terms of payment were negotiated later with HySky, not Highland, as the counter-party assuming any payment obligations. In all the contemporaneous correspondence presented to the Court herein, not a single document either from or to Neighbors refers to, or negotiates, "deferral" of fees to be paid by Highland. Evidence of "deferred" fees appears before the Court only once: in the self-serving affidavit filed by Plaintiffs over two years after the subject negotiations. The absence of even a single mention of fee deferral in the over year long stream of correspondence between HySky, Highland, and Neighbors at the very least raises a fact issue as to whether Highland ever agreed to pay Neighbors for his services, or if Neighbors simply provided services with the understanding that HySky would eventually pay him.

## 2. Neighbors Rendered his Services to HySky, not to Highland

Evidence indicates Neighbors rendered his serves to HySky, and not to Highland. First, Neighbors held himself out, and allowed himself to be held out, as the acting general counsel for

HySky. As early as February 2007, Neighbors served HySky in a general counsel capacity. *See* Exhibit 2(o) (email correspondence by Chura to third parties). In HySky's April 2007 draft business plan, Neighbors was characterized as the proposed Acting General Counsel. *See* Exhibit 2(p) at 16. He continued to be so characterized through the final draft of the business plan. *See* Exhibit 2(q) at 17 (May 20, 2007 Confidential Business Plan for HySky Communications, L.L.C.). He characterized himself as general counsel when negotiating his retainer amount with HySky and when communicating with HySky's business partners. *See* Exhibit 2(r). Additionally, he was held out as a HySky contact person. *See* Exhibit 2(s) (correspondence of July 2007).

Second, multiple HySky business documents indicate Neighbors rendered his services directly to HySky. HySky's weekly operations status reports show Neighbors worked on both due diligence and post-due diligence projects directly for HySky. *See* Exhibit 2(t). Additionally, HySky's project management documents indicate that during the December 2006 – September 2007 time period, Neighbors directly represented HySky in negotiating settlements and property leases in no less than eleven states and localities. *See* Exhibit 2(u). Notably, Highland, in a consulting role, also was assigned a separate role in the project management documents. *See id.* However, Highland's role is separate from any notations regarding Neighbors, and Neighbors is not referred to as Highland's counsel. *See id.* HySky was both the beneficiary and payor for the services.

### 3. Neighbors Repeatedly has Changed his Story Regarding Which Entity Owes his "Deferred" Fees

As HySky's financial condition deteriorated, Neighbors took steps to recharacterize his fees as Highland's, and not HySky's, debt. In February 2009, prior to HySky's bankruptcy filing, Neighbors asked HySky's board to pay his allegedly deferred fees. *See* Exhibit 2(b).

HySky's board meeting minutes read "Mr. Neighbors asked the Board to consider his firm's outstanding, unpaid legal fees that resulted from due diligence performed on the Company's behalf from December 2006 to September 2007." *See id.* at ¶ 1310. The minutes, drafted by Neighbors in his capacity as Acting Secretary of the Board, make no mention of Highland owing all or part of these fees. *See id.*

When HySky filed for bankruptcy on August 13, 2009, Neighbors asserted the same claim for unpaid services as HySky's debt in the bankruptcy. *See* <u>Exhibit 4</u> (Neighbors' Creditor's Claim against HySky). However, perhaps concerned that HySky did not have the funds to pay his alleged fees, Neighbors now characterized the fees as jointly owed by Highland and HySky. *See* <u>Exhibit 5</u> (Dkt. No. 93 in Case No. 09-35340 in the Bankruptcy Court for the Northern District of Texas, Dallas Division) at ¶ 4. Neighbors claimed that HySky owed such fees in contract, and, in the alternative, in *quantum meruit* because the services were rendered to HySky and HySky accepted the value of said services. *See id.* at ¶ 13. Neighbors' assertion in the bankruptcy proceeding directly contradicts Plaintiffs' instant claims that Highland contracted for Neighbors' services or that such services even were rendered to Highland.

In his testimony before the Bankruptcy Court, Neighbors described the November 2006 contract as "between the Neighbors law firm and a then-acting Manager of HySky." *See* <u>Exhibit 6</u> (Transcript of testimony in the Bankruptcy Case) at 2-3. Neighbors urged the Bankruptcy Court to disregard the Retention Letter between Neighbors and Highland as irrelevant. *See id.* at 4. Rather, HySky owes Neighbors for "the number of hours worked during the period of November 2006 to September 2007 for due diligence services performed on behalf of HySky Communications." *See id.* at 3.

Finally, Plaintiffs filed the instant Motion for Summary Judgment, completely neglecting to mention HySky owes the fees which are the subject of the Motion. While further discovery is needed to conclusively establish why Plaintiffs recharacterized the fees as Highland's debt, the motivation should be clear: Plaintiffs are seeking the only remaining deep pocket now that HySky has declared bankruptcy. HySky's inability to pay its debts does not create an obligation by Highland to cover HySky's legal fees – much less an obligation as a matter of "undisputed fact" subject to summary judgment.

**B.    Plaintiffs' Claims for _Quantum Meruit_ and Quasi-Contract Should be Denied[2]**

"To recover in _quantum meruit,_ plaintiff[s] must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." _Envtl. Landscape Design v. Shields,_ 75 N.C.App. 304, 306, 330 S.E.2d 627, 628 (1985). As shown _supra_, there is a disputed factual issue as to whether the services were provided to Highland, or to HySky. Furthermore, a factual dispute exists to whether or not Neighbors' services from December 2006 – September 2007 were provided gratuitously. Finally,

> It is a well established principle that an express contract precludes an implied contract with reference to the same matter.... There cannot be an express and an implied contract _for the same thing_ existing at the same time. Thus, the focus, in the _quantum meruit_ context, is on whether there is an express contract _on the subject matter at issue_ and not on whether there was a contract between the parties.

_Ron Medlin Constr. v. Harris_, 189 N.C.App. 363, 366, 681 S.E. 807, 810 (2009) (emphasis in original) (internal citations omitted). HySky and Neighbors' firm had the only express contract

---

[2]    North Carolina substantive law treats claims for _quantum meruit_ and quasi-contract as different phrasing of the same claim. _Paul L. Whitfield, P.A. v. Gilchrist,_ 348 N.C. 39, 42, 497 S.E.2d 412, 414-15 (1998). Accordingly, Plaintiffs' Motion for Summary Judgment on both _quantum meruit_ and quasi-contract should be denied on the same grounds.

requiring payment for Neighbors' legal fees. The existence of this express contractual relationship precludes an implied contract for the same services between Highland and Neighbors.

Finally, factual issues remain about the actual *quantum* of the services allegedly rendered to HySky. The billable hours submitted by Neighbors to HySky's board in February 2009 and the hours submitted in support of Plaintiffs' Motion for Summary Judgment are almost twice the number of hours Neighbors submitted near the time he allegedly provided the legal services. For example, on March 6, 2007, Neighbors provided timesheets showing 90.0 billable hours for January 2007 – March 6, 2007. *See* Exhibit 2(v). By comparison, Plaintiffs now claim Neighbors worked 173.7 hours for January 2007 – March 6, 2007. *See* Plaintiffs' Exhibit 4 at 1-5. Furthermore, Neighbors explicitly endorsed a statement on August 27, 2007 that he had worked a total of 180 hours for HySky. *See* Exhibit 2(j). However, Neighbors now claims he worked 347.5 hours through August 27, 2007. *See* Plaintiffs' Exhibit 4 at 1-9. These inconsistencies raise important fact issues regarding the *quantum* of services Plaintiffs allegedly provided, as well as issues regarding value of Plaintiffs' contract claims. Accordingly, summary judgment should be denied pending additional discovery.

## V.
## MOTION FOR CONTINUANCE PURSUANT TO RULE 56(f)

Summary judgment would be premature where (1) no discovery had been taken, (2) no scheduling order entered, and (3) issues of fact remain regarding, among other matters, the competence, value, and quantity of Plaintiffs' legal services. Accordingly, the Court should continue its date of ruling upon Plaintiffs' Motion for Summary Judgment pending discovery in this matter. *See* FED. R. CIV. P. 56(f); *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir.

2006) (under such circumstances, motions for continuance are "broadly favored and should be liberally granted").

To date, no scheduling order has been entered in this action and discovery has not yet commenced. As part of its defenses, Highland has raised issues concerning, among other matters, whether Neighbors and his firm were qualified to perform the corporate work they undertook and the competence and value of the work actually performed. *See* Answer to Amended Complaint (docket no. 18), p. 2, Eleventh Aff. Def. (lack of adequate consideration), and *passim* (denial of Plaintiffs' factual allegations). These are uniquely factual inquiries not suitable for expedited summary judgment, on which Highland intends to take both written discovery and depositions of Plaintiff Neighbors and any associates or other legal staff for whom Plaintiffs billed. *See* Exhibit 2(a) (Affidavit of Isaac Leventon) at ¶ 6; *see also, e.g.*, § IV(B) *supra* regarding the actual *quantum* of services provided. Without a scheduling order in place and in the absence of a motion for a status conference or scheduling order by Plaintiffs (the party seeking affirmative relief), Highland has not yet had the opportunity to undertake this necessary factual discovery. Under Rule 56(f), therefore, summary judgment would be premature.


## CONCLUSION

**For the foregoing reasons,** Defendant Highland Capital Management, L.P. respectfully prays the Court deny Plaintiffs' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56, find there are disputed issues of fact as to Plaintiffs' First, Sixth, Eighth, and Ninth Cause of Action, grant Highland's Motion for a Rule 56(f) Continuance, and grant Defendant Highland Capital Management, L.P. such further relief either at law or in equity to which it may be entitled.

Respectfully submitted this 1st day of March, 2010,

/s/ F. Hill Allen
F. Hill Allen
N. C. State Bar No. 18884
**THARRINGTON SMITH, L.L.P.**
209 Fayetteville Street
Post Office Box 1151
Raleigh, North Carolina 27602
Telephone:     (919) 821-4711
Facsimile:     (919) 829-1583
Email:         hallen@tharringtonsmith.com

AND

Isaac D. Leventon
*Admitted pro hac vice*
**HIGHLAND CAPITAL MANAGEMENT, L.P.**
Two Galleria Tower
13455 Noel Road, Suite 800
Dallas, Texas 75240
Telephone:     (972) 419-4482
Facsimile:     (972) 628-4147
Email:         ileventon@hcmlp.com

**ATTORNEYS FOR DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**File No. 5:09-CV-00352-F**

| | | |
|---|---|---|
| THE PATRICK NEIGHBORS LAW FIRM, | ) | |
| P.C. and PATRICK E. NEIGHBORS, | ) | **DEFENDANT HIGHLAND** |
| | ) | **CAPITAL MANAGEMENT, L.P.'S** |
| Plaintiffs, | ) | **RESPONSE TO PLAINTIFFS'** |
| | ) | **MOTION FOR SUMMARY** |
| vs. | ) | **JUDGMENT PURSUANT TO FED.** |
| | ) | **R. CIV. P. 56 AND MOTION FOR** |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | **CONTINUANCE PURSUANT TO** |
| and HYSKY COMMUNICATIONS, L.L.C., | ) | **FED. R. CIV. P. 56(f)** |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2010, I electronically filed Defendant Highland Capital

Management, L.P.'s Response to Plaintiffs' Motion for Summary Judgment Pursuant to FED. R.

CIV. P. 56 and Motion for Continuance Pursuant to FED. R. CIV. P. 56(f) with the Court using the

CM/ECF system which will send notification of such filing to all counsel of record.

/s/ F. Hill Allen
F. Hill Allen
N. C. State Bar No. 18884
**THARRINGTON SMITH, L.L.P.**
209 Fayetteville Street
Post Office Box 1151
Raleigh, North Carolina 27602
Telephone:      (919) 821-4711
Facsimile:      (919) 829-1583
Email:          hallen@tharringtonsmith.com