IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-352-F

THE NEIGHBORS LAW FIRM, P.C.      )
and PATRICK E. NEIGHBORS,          )
                                    )
                  Plaintiffs,       )
                                    )
        v.                          )        **MEMORANDUM AND**
                                    )        **RECOMMENDATION**
HIGHLAND CAPITAL MANAGEMENT,        )
L.P., and HYSKY COMMUNICATIONS,     )
LLC,                                )
                                    )
                  Defendants.       )

This action for recovery of attorney's fees and costs comes before the court on the motion

(D.E. 21) of plaintiffs The Neighbors Law Firm, P.C. ("Neighbors Firm") and Patrick E. Neighbors

("Neighbors") (collectively "plaintiffs") for partial summary judgment against defendant Highland

Capital Management, L.P. ("Highland"). The case is currently stayed as to the other defendant,

HySky Communications, LLC ("HySky"), because it has filed for bankruptcy. (*See* 28 Aug. 2009

Order (D.E. 12)). The motion seeks summary judgment on plaintiffs' claims against Highland based

on breach of contract and *quantum meruit* and implied contract.

The motion is supported by a memorandum, which was included within the motion, and

evidentiary exhibits.[1] Highland filed a memorandum in opposition (D.E. 26), supported by

substantial evidentiary exhibits.[2] In the alternative, Highland moved pursuant to Fed. R. Civ. P. 56(f)

---

[1] The evidence consists of a firm overview from Highland's website (D.E. 21-1); Neighbors' affidavit (D.E. 21-2); a 29 November 2006 engagement letter from Neighbors to Highland (D.E. 21-3); and plaintiffs' billing records (D.E. 21-4).

[2] The evidence consists of the affidavits of Clay Callan (D.E. 26-1), a portfolio manager for Highland, and Isaac Leventon (D.E. 26-2), Highland litigation counsel; a 29 November 2006 engagement letter from Neighbors to Highland (D.E. 26-3); 9 Feb. 2009 HySky board meeting minutes (D.E. 26-4); email correspondence between various individuals (D.E. 26-5 to -14, -17, -20, -22, -24); HySky's general ledger (D.E. 26-15); a HySky accounting report (D.E. 26-16);

to continue the court's ruling on the summary judgment motion until after discovery had been completed. Plaintiffs filed a reply (D.E. 28) and a supplemental memorandum in support of their reply (D.E. 28-4),[3] each of which was accompanied by additional evidentiary exhibits.[4] The reply and associated memorandum assert evidentiary objections to most of Highland's exhibits.

Plaintiffs' summary judgment motion was referred to the undersigned for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 17 Apr. 2010 Order (D.E. 33)). For the reasons set forth below, it will be recommended that plaintiffs' motion for partial summary judgment be denied, plaintiffs' evidentiary objections be denied in part on the merits and denied in part as moot, and Highland's motion for continuance pursuant to Rule 56(f) be denied.

## BACKGROUND

### I.    CASE HISTORY

Plaintiffs filed their original complaint on 20 June 2009 in Wake County Superior Court. (*See* Compl. (D.E. 1-1 at 5)).[5] On 6 August 2009, Highland and HySky removed it to this court on the basis of the court's diversity jurisdiction under 28 U.S.C. § 1332. (*See* Removal Notice (D.E.

---

HySky confidential business plans (D.E. 26-18, -19); HySky contact list (D.E. 26-21); HySky project plan (D.E. 26-23); Hysky limited liability company agreement (D.E. 26-25); HySky voluntary bankruptcy petition (D.E. 26-26); bankruptcy proof of claim filed by plaintiffs (D.E. 26-27); HySky's response to plaintiffs' claim of credit (D.E. 26-28); and an excerpt from a 29 January 2010 bankruptcy hearing transcript (D.E. 26-29). As discussed below, plaintiffs have challenged the admissibility of most of Highland's evidence.

[3] The court granted plaintiffs leave to file a reply in excess of the ten pages permitted by the Local Rule. (*See* 7 Apr. 2010 Order (D.E. 33)).

[4] The evidence consists of an excerpt from a 29 January 2010 bankruptcy hearing transcript (D.E. 28-1); HySky's objection to plaintiffs' bankruptcy claim (D.E. 28-2); a second affidavit by Neighbors (D.E. 28-3); and a 2 November 2007 news story from the website of Hartline, Dacus, Barger, Dreyer & Kern, L.L.P. (D.E. 28-5).

[5] All page references to the record are to the page numbers assigned by the CM/ECF electronic docketing system.

2

1)). Highland and HySky filed their answers on 7 August 2009 (D.E. 4)[6] and 10 August 2009 (D.E. 5), respectively.

On 10 August 2009, plaintiffs filed their amended complaint (D.E. 11). On 28 August 2009, the court stayed the case (D.E. 12) with respect to HySky as a result of the bankruptcy petition filed by HySky in the Northern District of Texas on 13 August 2009 (*see* HySky Mot. to Stay (D.E. 10)). On 23 September 2009, Highland filed its answer (D.E. 18) to the amended complaint.

On 7 May 2010, plaintiffs filed their second amended complaint (D.E. 36). Highland filed its answer (D.E. 38) on 1 June 2010.[7] No discovery had been conducted when plaintiffs filed their summary judgment motion.

## II. FACTUAL BACKGROUND

In this action, plaintiffs seek recovery of legal fees in the amount of $131,530.00 allegedly incurred from December 2006 to September 2007 for performance of due diligence work in connection with an asset purchase by HySky. They also seek costs of $3,300.95 allegedly incurred from January 2008 to December 2008 in connection with services they provided to HySky as general counsel. Although in their complaint they allege that both defendants are liable for both the fees and costs, their summary judgment motion seeks recovery solely from Highland given the bankruptcy stay applying to HySky.

The salient facts, which are undisputed unless otherwise indicated, are as follows:

---

[6] This docket entry refers to a corrected version of Highland's answer filed on the same day that it filed the original version of its answer at D.E. 3.

[7] The amended complaints are partial amendments to the original complaint and do not reassert all of plaintiffs' allegations. The initial amended complaint adds two claims (the eighth and ninth) and revises one prior allegation, and the second amended complaint adds two more claims (the tenth and eleventh). While Highland's first two answers include responses to each paragraph of plaintiffs' allegations, the answer to the second amended complaint provides specific responses to only the additional allegations of the second amended complaint. All of Highland's answers include affirmative defenses it asserts.

3

According to plaintiffs, the Neighbors Firm is a professional corporation created under the laws of North Carolina with its principal place of business in Wake County. (Compl. ¶ 1). They also allege that Neighbors is a duly licensed North Carolina attorney, and employee and owner of the Neighbors Firm. (*Id.* ¶ 2; Neighbors Aff. (D.E. 21-2) ¶ 1).

Highland is a limited liability partnership in the business of capital and asset management created under the laws of Delaware and having its principal place of business in Dallas, Texas. (Compl. ¶ 3; Am. Ans. ¶ 3). HySky is a limited liability company in the business of antenna communications created under the laws of Delaware and having its principal place of business in Atlanta, Georgia until 31 December 2008 and thereafter in Dallas, Texas. (Compl. ¶ 4; Am. Ans. ¶ 4). According to Highland, at all times relevant to this action, Highland was HySky's sole equity holder. (Callan Aff. (D.E. 26-1) ¶ 2).

Plaintiffs allege that they were retained by Highland on or about 29 November 2006 to provide legal due diligence services in conjunction with an asset purchase by HySky. (Compl. ¶ 6). HySky had contracted with Equitas, LLC ("Equitas") for an option to purchase the assets of Equitas subject to a satisfactory due diligence review. (Compl. ¶ 6; Am. Ans. ¶ 6). The agreement was formalized in an Option to Purchase Assets Agreement dated 27 December 2006. (*Id.*). According to plaintiffs, HySky was at the time a prospectively highly capitalized start-up that, upon acquisition of the assets, would become a going concern. (Compl. ¶¶ 5, 7). Plaintiffs allege that they and Highland agreed that plaintiffs would defer billing for the due diligence legal fees until after the option was exercised. (Compl. ¶ 7).

The Equitas option was not exercised for almost a year, until 10 December 2007. (Compl. ¶ 7; Am. Ans. ¶ 7). Plaintiffs allege that they were paid for the period October to December 2007

4

(Compl. ¶ 8). But they allege they were not paid fees for the remainder of the due diligence period, December 2006 though September 2007, totaling $131,530.00, despite repeated demand. (*Id.* ¶¶ 10-13; Neighbors Aff. ¶ 6).

On 1 January 2008, plaintiffs were engaged to provide general counsel legal services to HySky. (Compl. ¶ 9; Am. Ans. ¶ 9). Plaintiffs provided these services for all of 2008. (Compl. ¶ 9; Am. Ans. ¶ 9). Plaintiffs do not allege nonpayment of the fees for this work. They have not, however, been paid $3,300.95 for related costs they incurred, despite repeated demand. (Compl. ¶ 14; Am. Ans. ¶ 14). An offer was made, by both defendants according to plaintiffs and by HySky according to Highland, to pay these alleged costs, but only in return for a release of all of plaintiffs' claims, against both defendants according to plaintiffs and against HySky alone according to Highland. (Compl. ¶ 14; Am. Ans. ¶ 14). Plaintiffs' relationship with HySky terminated on 1 April 2009. (Compl. ¶ 12; Am. Ans. ¶ 12).

III.    **PLAINTIFFS' CLAIMS**

In their complaint, plaintiffs assert eleven causes of action. The nine causes of action relating to the fees for due diligence work are for: breach of contract (first), *quantum meruit* (eighth), and implied contract (ninth) against both defendants; common law fraud (second) including punitive damages (third) against Highland; statutory fraud (fourth) including punitive damages (fifth) against both defendants; negligent misrepresentation (tenth) against Highland; and interference with contract (eleventh) against Highland. The two causes of action relating to the costs for the general counsel services are for: breach of contract (sixth) against both defendants and punitive damages (seventh) against both defendants for demanding a release in exchange for payment of the costs.

5

In their motion for partial summary judgment, plaintiffs seek summary judgment against Highland on the first, sixth, eighth, and ninth causes of action. In other words, they seek summary judgment on their causes of action for breach of contract and *quantum meruit* and implied contract relating to the due diligence fees, and for breach of contract relating to the general counsel costs.

## PLAINTIFFS' SUMMARY JUDGMENT MOTION

**I. STANDARD OF REVIEW**

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This standard dictates that when summary judgment is sought on a contract claim, it is appropriate only "when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." *Sheridan v. Nationwide Retirement Solutions, Inc.*, 313 Fed. Appx. 615, 617 (4th Cir. 2009). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary

6

judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56(a) permits the court to grant summary judgment "with respect to all claims in an action or only some claims in a multiple claim action." *Evergreen Intern., S.A. v. Marinex Const. Co., Inc.*, 477 F. Supp. 2d 697, 699 (D.S.C. 2007). A motion for partial summary judgment "utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994). However, a party is not entitled to partial summary judgment unless such judgment would be dispositive of an entire claim. *Evergreen*, 477 F. Supp. 2d at 699. The "piecemealing" of select elements on a single claim is not permitted by Rule 56. *Id.* Further, "partial summary judgment is properly withheld where, on the basis of the cold record, a considerable expenditure of judicial time and effort will be required 'to sift out and piece together the undisputed facts essential to a summary judgment.'" *Toyoshima Corp. of California v. Gen. Footwear, Inc.*, 88 F.R.D. 559, 560 (S.D.N.Y. 1980) (quoting *Perma Research & Dev. Co. v. Singer Co.*, 308 F. Supp. 743, 750 (S.D.N.Y. 1970)). "In a complex fact-intensive case . . . , a court has discretion to deny a partial summary judgment, even if such is justified, in order to proceed more efficiently and more expeditiously with a definitive resolution." *Ryste & Ricas, Inc. v. United States*, 50 Fed. Cl. 85, 90 (2001). "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Tech., Inc.*, 269 Fed. Appx. 302, 308 (4th Cir. 2008).

7

## II.    PLAINTIFFS' EVIDENTIARY OBJECTIONS

### A.    Overview

Before turning to the merits of plaintiffs' summary judgment motion, the court must address plaintiffs' evidentiary objections. By them, plaintiffs request that the court exclude from its consideration of their summary judgment motion most of Highland's exhibits. In essence, plaintiffs seek an order striking these exhibits.

As a request for an order, plaintiffs' objections should have been asserted through a motion: "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). And the motion should have been denominated as such.[8] Local Civil Rule 10.1(e), E.D.N.C. (requiring that all motions state the title of the motion as well as "the federal statute or rule number under which the party is proceeding"). Failure to follow these requirements is not a mere technical violation, but impedes notice to other parties and the court that relief is being sought, particularly in the era of electronic filing. *See Wilson v. Norfolk S. Ry. Co.*, No. 1:08CV395, 2009 WL 189397, at *3 (W.D.N.C. 26 Jan. 2009). In the present context, proceeding without a motion also deprived the opposing parties of the automatic right to respond.

Under these circumstances, the court questions whether it could properly uphold any of plaintiffs' objections without providing Highland an opportunity to respond to them. The court finds, however, that further briefing on the objections is unnecessary. The evidence submitted by Highland as to which plaintiffs asserted no objections at all or objections that are meritless, together with the evidence submitted by plaintiffs, establishes that there are genuine issues of material fact

---

[8] The reply is entitled "Plaintiffs' Reply to Defendant Highland's Response to Plaintiffs' Motion for Summary Judgment, Fed. R. Civ. P. 56." The title of the memorandum supporting the reply consists of this language plus the phrase "Memorandum of Law." The memorandum was filed as the fourth exhibit to the reply, not a stand-alone document, tending to further impede notice that plaintiffs were requesting additional relief.

that preclude summary judgment for plaintiffs.[9] All of plaintiffs' objections are therefore subject to either denial on the merits or denial as moot.

Plaintiffs asserted three basic objections to evidence that the court has relied upon in ruling on the summary judgment motion—authentication, hearsay, and relevance.[10] Set out below is an explanation for the recommendation that each of these objections be denied, including a specification of the evidence to which they relate.

## B.    Authentication Objections

### 1. Record Custodian's Certification

Plaintiffs challenge several of Highland's evidentiary materials on the grounds that they have not been properly authenticated as required under Fed. R. Evid. 901 or 902. "It is well settled that unsworn, unauthenticated documents cannot be considered on motions for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). However, Rule 902(11) permits self-authentication of a record without foundation testimony if it is accompanied "by a written declaration of its custodian or other qualified person" certifying that it meets certain specified requirements, which are those governing admissibility under the business record exception in Rule 803(6). Specifically, the certification must state that the record:

> (A)    was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

---

[9] The court did not rely on the following evidence in making its ruling on the summary judgment motion: email correspondence between various individuals (D.E. 26-5 to -13, -17, -22, -24); HySky contact list (D.E. 26-21); HySky project plan (D.E. 26-23); and HySky voluntary bankruptcy petition (D.E. 26-26).

[10] An additional ground for objection by plaintiffs was speculation, but they asserted it as to two email exhibits (D.E. 26-10, -11) not relied upon by the court in making its ruling on the summary judgment motion.

(B)     was kept in the course of the regularly conducted activity; and

(C)     was made by the regularly conducted activity as a regular practice.

Fed. R. Evid. 902(11).

The exhibits relied upon by the court that plaintiffs challenge for lack of authenticity are the 9 February 2009 HySky board meeting minutes (D.E. 26-4), HySky's general ledger (D.E. 26-15), a HySky accounting report (D.E. 26-16), two versions of HySky's confidential business plan (D.E. 26-18, -19), and the limited liability company agreement (D.E. 26-25).[11] Highland submitted these exhibits along with the affidavit of Isaac Leventon, litigation counsel for Highland, in which he provides a certification that complies with Fed. R. Evid. 902(11). (*See* Leventon Aff. (D.E. 26-2)).

Plaintiffs have offered no evidence to rebut the statements in Leventon's certification . Rather, they assert that Leventon's certification is insufficient because it does not provide specific details of the applicable maintenance and retention policy. Plaintiffs further contend that Highland is not a proper custodian of HySky's business records.

Plaintiffs have failed to cite, nor has the court found, any authority for plaintiffs' assertion that the certification by Leventon, which complies with the language of Rule 902(11), must additionally describe the details of the maintenance and retention policy. As for plaintiffs' argument that Highland is not a proper custodian of HySky's records, Leventon specifically attests that he has "personal knowledge that Highland Capital, as a former equity holder in HySky Communications, L.L.C. ('HySky'), maintains records and email correspondence related to HySky in the regular course and scope of Highland Capital's business." (Leventon Aff. ¶ 2). Plaintiffs have submitted no

---

[11] Plaintiffs make an extensive argument that some of the emails Highland submitted do not qualify under the business records self-authentication provisions of Fed. R. Evid. 902(11) because they do not reflect a regularly conducted activity. The court has not found it necessary to rely on these emails in reaching its decision on the summary judgment motion.

10

evidence rebutting this statement, and the court finds that it is sufficient to qualify Highland as a custodian of HySky business records. Accordingly, the court finds that plaintiffs have failed to adequately support their authenticity argument, and it will be recommended that plaintiffs' objections on these grounds be denied.

### 2.      Transcript of Bankruptcy Hearing

Plaintiffs also challenge the authenticity of the transcript of a 29 January 2010 hearing (D.E. 26-29) in the HySky bankruptcy action in the Northern District of Texas (No. 09-35340-hdh11). They contend that the transcript has not been verified in compliance with Fed. R. Evid. 902(4) (providing for self-authentication of certified public records) or 902(8) (providing for self-authentication of documents "accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments").

Irrespective of whether the transcript complies with the referenced self-authentication provisions, the court takes judicial notice that the copy of the transcript submitted by Highland is an accurate copy of the transcript of the 29 January 2010 hearing as it is appears in the publicly available official record of the bankruptcy case at Docket Entry 111. Evidence Rule 201 permits the court to take judicial notice of an adjudicative fact, such as that here, which are "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). It has been recognized specifically that "[a] court may take judicial notice of court filings and other matters of public record." *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th

11

Cir. 1998). Accordingly, it will be recommended that plaintiffs' objections to these documents be denied.

## C. Hearsay Objections

Plaintiffs assert that the following exhibits, to which plaintiffs asserted authentication objections, are inadmissible hearsay under Fed. R. Evid. 801: the HySky board meeting minutes; the HySky confidential business plans; the HySky limited liability company agreement; and the bankruptcy hearing transcript. Plaintiffs also assert a hearsay objection to 12 November 2007 email correspondence between Neighbors and Chura (D.E. 26-20).

As already indicated, the HySky board meeting minutes, HySky confidential business plans, and the Hysky limited liability company agreement have been properly certified under Fed. R. Evid. 902(11). Consequently, they fall within the hearsay exception for business records under Fed. R. Evid. 803(6) (excepting documents certified in compliance with Rule 902(11)). The 12 November 2007 email from Neighbors to Chura and the statement by Neighbors in the excerpt of the bankruptcy transcript do not fall within the definition of hearsay because they are each admissions of a party opponent (*i.e.*, Neighbors) under Fed. R. Evid. 801(d)(2). Plaintiffs' hearsay objections to the specified evidence should accordingly be denied.

## D. Relevance Objections

Finally, plaintiffs challenge the relevance of the following previously discussed exhibits: HySky's general ledger; the HySky accounting report; the HySky confidential business plans; the 12 November 2007 email between Neighbors and Chura; and the HySky limited liability company agreement. Plaintiffs also object to a 10 September 2007 email from Neighbors to Chura (D.E. 26-14) as irrelevant. Fed. R. Evid. 401 defines "[r]elevant evidence" as that which has "any tendency

12

to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The court finds plaintiffs' relevance objections to be without merit. First, all of these exhibits are referenced by the court below in support of its analysis of the merits of plaintiffs' summary judgment motion, thereby indicating that the court found such evidence relevant to its determination whether there are genuine issues of material fact. Additionally, the court finds some of plaintiffs' objections to be based on unreasonable estimations of the evidentiary value of a document. For example, plaintiffs challenge the relevance of the copy of the draft agreement for legal services agreement that Neighbors submitted to Chura (D.E. 26-14) because it is unexecuted. But this draft agreement, which named HySky as the contracting party, is relevant as tending to show, *inter alia*, that plaintiffs were providing legal services to HySky in 2008 and not Highland as plaintiffs contend. It will therefore be recommended the plaintiffs' relevance objections be denied as to the specified evidence.

## III.    APPLICABLE SUBSTANTIVE LEGAL PRINCIPLES

### A.    Choice of Law

Because this case is before the court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332, it must determine which jurisdiction's substantive law governs the claims at issue, namely, plaintiffs' contract and *quantum meruit* and implied contract claims. To make this determination, the court must apply the choice of law rules of North Carolina as the forum state. *See Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 290 (4th Cir. 2010). Under North Carolina choice of law rules, a contract is controlled by the substantive law of the place where

13

the last act in forming it occurred. *See Eli Research, Inc. v. United Comm'n Group, LLC*, 312 F. Supp. 2d 748, 754 (M.D.N.C. 2004).

The complaint in this case does not allege the place of contract formation, and, in fact, a central issue in this case is whether a contract was even formed. Additionally, while plaintiffs cite no legal authority, North Carolina or otherwise, in support of their substantive claims, they do cite North Carolina law regarding the calculation of prejudgment interest. (*See* Pls.' Mem. 6-7). Highland also cites to North Carolina law in its memorandum in opposition, and plaintiffs do not dispute such application in their reply. Consequently, for the purpose of this motion, the court will apply the substantive law of North Carolina to the claims at issue.

## B. Law of Contracts and *Quantum Meruit*

Under North Carolina law, "[t]he essential elements for a breach of contract claim are the existence of a valid contract and a breach of the terms of that contract." *Eli Research*, 312 F. Supp. 2d at 755 (citing *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 843 (2000)). "A valid contract exists when there is an agreement based on a meeting of the minds and sufficient consideration." *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07CV169, 2008 WL 4005738, at *3 (M.D.N.C. 25 Aug. 2008) (citing *Creech ex rel. Creech v. Melnik*, 147 N.C. App. 471, 477, 556 S.E.2d 587, 591 (2001)).

As to *quantum meruit*, it serves as an equitable remedy to prevent unjust enrichment when there is no express contract. *Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414-15 (1998). It is based upon a quasi-contract or contract implied in law. *Id.* Thus, while plaintiffs identify *quantum meruit* and implied contract as separate claims, they are in fact components of a

14

single claim, and the court will treat them as such. The measure of recovery under *quantum meruit* is the reasonable value of the services provided. *Id.*

To recover in *quantum meruit*, a plaintiff must show that "(1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *TSC Research, LLC v. Bayer Chemicals Corp.*, No. 1:06CV701, 2009 WL 2168965, at *6 (M.D.N.C. 16 July 2009) (citing *Scott v. United Carolina Bank*, 130 N.C. App. 426, 429, 503 S.E.2d 149, 152 (1998)). "*Quantum meruit* claims require a showing that both parties understood that services were rendered with the expectation of payment." *Scott*, 130 N.C. App. at 429, 503 S.E.2d at 152.

## IV. ANALYSIS OF PLAINTIFFS' CONTRACT CLAIMS FOR LEGAL FEES

### A. Alleged Grounds for Summary Judgment

As required to obtain summary judgment on their contract claims for legal fees, plaintiffs contend that there is no genuine issue of material facts that they had an agreement with Highland to provide the due diligence services they performed and that Highland breached the agreement by not paying plaintiffs as agreed. In support of this contention, plaintiffs rely, in part, on a so-called engagement letter, dated 29 November 2006, from plaintiffs to Highland's general counsel, Kevin Ciavarra (D.E. 21-3). The letter states, in pertinent part, that "this correspondence [is] to serve as an engagement letter between this law firm and Highland regarding an agreement to perform future legal services on an as needed basis as we may mutually agree, in writing or orally (the 'Engagement')." (Engagement Ltr.). It goes on to state that "there shall be no attorney or legal fees charged for worked [*sic*] performed by this firm on your behalf until we shall mutually agree." (*Id.*).

15

The letter also discusses keeping the addressee informed about work being done, termination of the Engagement, and reimbursement for costs. (*Id.*).

Excluding the closing and signature, the letter reads:

**Re: Engagement Letter–Highland Capital Management, L.P. ("Highland")**

Dear Mr. Ciavarra,

Please allow this correspondence to serve as an engagement letter between this law firm and Highland *regarding an agreement to perform future legal services on an as needed basis as we may mutually agree, in writing or orally* (the "Engagement"). In that regard, this engagement letter and any ancillary agreements, as we shall determine, will have the effect of establishing complete confidentiality, as well as the attachment of the attorney-client privilege, for any matters, communications, data, or similar information transmitted between the parties, or for any information gained through our representation of Highland.

We will provide legal services to advance your interests. For all matters within our control, we will keep you informed of progress, and will fully and accurately disclose all facts to keep you advised of all developments relating to any matter we undertake. It is understood that the Engagement may be terminated by either party at any time. At such time as the Engagement is terminated, this law firm will return all work product to Highland, except copies that are required by law to be kept on file.

Pursuant to my understanding of our mutual relationship, *there shall be no attorney or legal fees charged for worked performed by this firm on your behalf until we shall mutually agree.* You agree that your firm will defray various reasonable and necessary costs and expenses for appropriate representation, including messenger and delivery service, travel (including mileage, parking, airfare, lodging, and ground transportation), and, if applicable, computerized research, expert review fees, filing fees and other miscellaneous expenses associated with adequate representation.

Thank you for allowing us the opportunity to serve you in this capacity. We look forward to a fruitful and mutually beneficial professional relationship.

With best wishes . . . .

(Engagement Ltr.) (bolding original; italicization added).

16

Plaintiffs also rely on Neighbors' first affidavit. In it, Neighbors states that on the same date as the engagement letter he had a conversation with Niles Chura, whom Neighbors says was a Highland employee, in which an agreement on certain specific terms was reached. (Neighbors Aff. ¶ 4). He says that he agreed to perform due diligence work on the Equitas transaction and to do so at an hourly rate of $350.00. (*Id.* ¶¶ 3, 4). He also states that he agreed to defer billing for the work performed until after the option was exercised, after which point plaintiffs would be compensated for the work. (*Id.* ¶ 4).

Neighbors says in his affidavit that the deferral of payment lasted from December 2006 until September 2007. (*Id.* ¶ 5). He states that around September 2007 he requested that the payment deferment stop and that he was paid for October to December 2007. (*Id.* ¶ 5).

For the period December 2006 to September 2007, he says that he performed 375.8 hour of work at the agreed rate of $350.00, totaling $131,530.00 in fees. (*Id.* ¶ 6). As substantiation of the hours worked, plaintiffs submitted ten pages of their billing records showing time entries for the period of 13 December 2006 to 30 September 2007. (Billing Records (D.E. 21-4)). All the work was performed by Neighbors. (Neighbors 2nd Aff. (D.E. 28-4) ¶ 2).

To show breach of the alleged contract for the fees due for December 2006 to September 2007, Neighbors states in his affidavit that he requested payment of the fees from Highland and HySky on many occasions, although due to accounting problems the dollar amount requested was at times between $84,000.00 and $86,000.00. (Neighbors Aff. ¶¶ 6,7). In each instance, Neighbors states payment was denied.

17

**B.    Material Issues of Fact Presented**

In response to plaintiffs' showing, Highland contends that there are a number of basic issues of material fact that preclude summary judgment. The court agrees and will address issues raised by Highland and others below. In doing so, the court is not attempting to catalogue every genuine issue of material fact presented, but rather to identify several of the most basic.

### 1. Whether a Contract Existed

An initial issue of material fact presented is whether a contract ever existed for the legal services in question. One reason is the indefiniteness of the engagement letter.

It is well established that "a contract, or offer to contract, leaving material portions open for future agreement is nugatory and void for indefiniteness." *Boyce v. Mahan*, 285 N.C. 730, 734, 208 S.E. 2d 692, 695 (1974). "A party may not enforce a purported contract that omits the 'nature and extent of the service to be performed, . . . and the person to whom it is to be rendered, and the compensation to be paid' . . . ." *Media Network, Inc. v. Mullen Advertising, Inc.*, Nos. 05 CVS 7255, 15428, 2007 WL 2570175, at *9 (N.C. Bus. Ct. 19 Jan. 2007) (quoting *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921)). The engagement letter can reasonably be read to be an agreement to agree subject to these principles. It does not specify the nature of the legal services to be rendered, the party to which they are to be rendered, or the compensation to be paid. Instead, as indicated, the engagement letter speaks of performance of legal services "as we may mutually agree, in writing or orally" and not charging fees "until we shall mutually agree." (Engagement Ltr.).

Of course, Neighbors testified that he reached an oral agreement with Chura regarding certain specific terms. But the relationship between the conversation with Chura and the engagement letter

18

is unclear. Standing alone, the conversation tends to show that there was a contract and the letter tends to show that there was not. The lack of clarity is compounded by the statement in plaintiffs' motion that "*[a]fter* Mr. Chura and plaintiffs agreed to these terms, plaintiffs memorialized their engagement with Mr. Kevin Ciavarra, corporate counsel for defendant Highland (Exhibit 3 [*i.e.*, the engagement letter])." (Plfs.' Mem. ¶ 8) (emphasis added). If the arrangement made in the conversation with Chura truly is memorialized in the engagement letter, that arrangement may not, in fact, have constituted a contract as plaintiffs contend because the engagement letter can reasonably be interpreted as an unenforceable agreement to agree, as discussed.

The court recognizes that statements in briefs are ordinarily not to be treated as admissions in considering motions, including specifically motions for summary judgment. *See, e.g., Northern Ins. Co. of New York v. Baltimore Business Communications*, 68 Fed. Appx. 414, 421 (4th Cir. 2003) ("[L]egal memoranda, unlike pleadings or affidavits, do not generally constitute binding judicial admissions.") (citing *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 745 (5th Cir.1988)); *Hecht v. American Bankers Ins. Co.*, No. Civ. A. 304CV00098, 2005 WL 2716373, at *3 (W.D. Va. 2005). But the courts recognize that there can be "highly unusual circumstances" where statements in briefs can appropriately be deemed admissions. *Hardy*, 851 F.2d at 745.

Here, such unusual circumstances are present. The author of the brief is one of the parties and the owner of the other party, as opposed to an attorney acting purely in a representative capacity. *See Kassel v. Gannett Co., Inc.*, 875 F.2d 935, 952 n.17 (1st Cir. 1989) (deeming statements in plaintiff's appellate brief an evidentiary admission in part because it was written by plaintiff himself). In addition, in the brief, Neighbors is speaking of his own actions and "'what the real world facts are,'" as opposed to facts included in a court record, as would be likely with an appellate

19

brief. *See id.* (quoting *Hardy*, 851 F. 2d at 745) (citing this factor as a basis for treating statements in an appellate brief as an evidentiary admission). Notably, as well, the brief is one filed in this case, rather than in another case, a circumstance in many of the cases proscribing reliance on statements from briefs. *See, e.g., Northern*, 68 Fed. Appx. at 420-21. Although Neighbors submitted two affidavits in support of the summary judgment motion, he did not include the foregoing statement from the brief in either affidavit.

Other evidence bearing on the existence of a contract is an email Neighbors sent to Chura on 10 September 2007 forwarding a draft legal services agreement. (10 September 2007 Email (D.E. 26-14) 1). In the email, Neighbors states: "I was looking over the historical document, and it appears that I only had *an engagement letter* with Highland, rather than an *agreement*. Thus, I have created a new agreement . . . ." (*Id.*) (emphasis added)). Neighbors himself thereby appears to be acknowledging that he lacked a contract for the due diligence services performed.

This and other evidence establishes that plaintiffs have failed to show as a matter of law that they had a contract for the legal services they performed. While this alone precludes summary judgment on their contract claims, it is by no means the only genuine issue of material fact presented.

### 2. Whether, if a contract existed, Highland was the contracting party

Assuming plaintiffs had a contract for their services, an additional issue of material fact presented is whether the contract was with Highland or HySky. As noted, Neighbors states that Chura was acting as an employee of Highland when Neighbors reached his oral agreement with him. (Neighbors Aff. ¶ 2). But Highland has submitted evidence that at the time Chura was both an employee of Highland and a manager of HySky with the power to enter into contracts on behalf of

20

HySky. (*See* Callan Aff. ¶ 7; HySky Limited Liability Company Agrmt. 14, art. 5.1; 26). There is accordingly an issue as to which entity Chura was representing.

Moreover, it appears undisputed that the work underlying plaintiffs' fee claim was on an asset purchase agreement by HySky. Thus, the services were being rendered to HySky. While it is, of course, possible for one party to agree to pay for services rendered to another, the provider of the services would be most likely to have entered into a contract for the services with the party receiving them.

Plaintiffs' billing records reflect the provision of the legal services to HySky. They are labeled "Hours for Hysky." (Billing Records 1). In addition, the billing entries appear to be related almost solely to services for HySky. In fact, while "Highland" is referenced only once in the records, "HySky" is referenced more than 100 times. (Billing Records).

There are also numerous documents in which Neighbors is held out to be acting as general counsel to HySky by himself and others. (*See* HySky Confidential Business Plan (D.E. 26-18) (19 April 2007) 16 (identifying Neighbors as "Proposed Acting General Counsel"); HySky Confidential Business Plan (D.E. 26-19) (20 May 2007) 17 (same); 12 Nov. 2007 Email from Neighbors to Chura (D.E. 26-20) 1) (acknowledging his "acting general counsel duties for HySky")).

Further, plaintiffs have offered no argument or evidence that Highland should be treated as the party responsible for HySky's contractual liabilities or that HySky should have its separate entity status disregarded and be treated as part of Highland. In fact, Highland has submitted evidence that HySky was operated independently from Highland. (*See* HySky's Limited Liability Company Agrmt. (D.E. 26-25)). In addition, Clay Callan, a portfolio manager for Highland, states in his affidavit that although Highland was the sole equity holder in HySky, "HySky maintained an

21

independent board of managers [and that] [a]t no time were Highland Capital employees the majority of the board members." (Callan Aff. ¶ 2).

The evidence also shows that plaintiffs have repeatedly taken the position that HySky owes plaintiffs the fees for the legal services performed. At the 5 February 2009 HySky board meeting, Neighbors "addressed the issue of release of funds from the general and due diligence escrow accounts" and "asked the Board to consider his firm's outstanding, unpaid legal fees that resulted from performing due diligence on the Company's behalf from December, 2006 to September, 2007." (HySky Board Minutes (D.E. 26-4) 1). On 4 December 2009, plaintiffs asserted a claim on the unpaid fees in HySky's bankruptcy action. (Bankr. Claim (D.E. 26-27)). In plaintiffs' response to HySky's objection to the claim, plaintiffs allege that "HySky was a contracting party and payer in addition to Highland" and that "in November, 2006, [plaintiffs] contractually agreed with HySky to provide due diligence legal services." (Bankr. Response (D.E. 26-28) ¶¶ 4, 13). In a hearing before the bankruptcy court, Neighbors referred to the disputed contract as "an agreement between the Neighbors law firm and a then-acting Manager of HySky [Chura]." (Bankr. Transcript (D.E. 26-29) 2).

Plaintiffs cite to Highland's alleged payment of their fees for October to December 2007 as evidence of the existence of an agreement with Highland. (*See* Neighbors Aff. ¶ 5). But Highland has submitted the general ledger of HySky showing that HySky paid plaintiffs a $15,000.00 retainer during that period. (*See* HysSky General Ledger (D.E. 26-15) 6-7).

The record thus establishes that there is a genuine of issue of material fact as to whether, if plaintiffs did have a contract for the services at issue, the contract was with Highland or HySky. The

existence of this issue, irrespective of the other issues of material fact presented, precludes summary judgment.

### 3. Whether plaintiffs agreed to provide services gratuitously

The evidence submitted by Highland also raises a clear dispute as to whether plaintiffs agreed to provide some or all of their services free of charge. While plaintiffs assert that they agreed to defer the billing for services performed only until after the Equitas option was exercised, which ultimately occurred on 10 December 2007, Highland cites to evidence that plaintiffs agreed to provide theses services for free.

Specifically, in a 12 November 2007 email from Neighbors to Chura, Neighbors provides an hourly billing statement for October 2007 and represents that this billing statement reflects a write-down of billed charges and expenses from $16,447.32 to $10,000.00, which was done "in anticipation of a long term sustained relationship with HySky in this regard." (12 November 2007 Email (D.E. 26-20) 1). Neighbors continues in the email to summarize other benefits of plaintiffs' past representation of HySky, including "[a]pproximately 150 hours of unbilled time" for 1 January to 1 September 2007 constituting "an accrued benefit of about $52,500.00." (*Id.*). This evidence creates a dispute as to whether the parties intended that plaintiffs be compensated on a deferred basis or at all.

This dispute in itself precludes summary judgment on plaintiffs' claim that Highland breached a contract it had with plaintiffs by failing to pay for the legal services performed. For this and the other reasons discussed, it will be recommended that plaintiffs' motion for summary judgment be denied with respect to plaintiffs' contract claims.

23

## V. ANALYSIS OF PLAINTIFFS' *QUANTUM MERUIT* CLAIMS FOR LEGAL FEES

To support its claim for fees based on *quantum meruit*, plaintiffs cite to the same evidence supporting their contract claims. They contend that they rendered the due diligence services to Highland, the services were knowingly and voluntarily accepted by Highland, and the services were not given gratuitously. But many of the same issues that preclude summary judgment on plaintiffs' contract claims also preclude summary judgment on plaintiffs' *quantum meruit* claim.

For example, as discussed, there is a genuine issue of material fact whether plaintiffs had an express agreement for the legal services in question. If they did, they have no claim for *quantum meruit*. *See Whitfield*, 348 N.C. at 42, 497 S.E. 2d at 415. There are also genuine factual disputes as to whether plaintiffs rendered the disputed services to Highland, rather than HySky, and whether the services were provided on a gratuitous basis. Accordingly, it will be recommended that plaintiffs' motion with respect to the *quantum meruit* claim also be denied.

## VI. ANALYSIS OF PLAINTIFFS' CLAIMS FOR COSTS

Plaintiffs fall short of showing as a matter of law that Highland owes them for the costs they claim. As with their contract claims for fees, there are genuine issues of material fact whether Highland, rather than HySky, is the party with any obligation to pay plaintiffs for the costs.

For example, plaintiffs pled in their complaint, and Highland admitted, that "Plaintiffs were engaged to provide legal services of a general counsel nature to HySky as an ongoing concern, and did so for all of 2008." (Compl. ¶ 9; Ans. ¶ 9). Accounting records from HySky show that it paid plaintiffs a monthly retainer in 2008. (HySky Acctng. Rept. (D.E. 26-16) 1). As indicated, all the costs plaintiffs claim were incurred in 2008. One would reasonably expect the party that had contracted for the legal services and was paying the retainer would also pay any associated costs.

24

In addition, the record contains a September 2007 draft of an employment contract between plaintiffs and HySky (D.E. 26-14), sent by Neighbors to Chura. There is no signed version in the record, but it has been admitted that HySky retained plaintiffs to perform work in 2008. In any event, the draft provides for HySky's payment of plaintiffs' expenses, which are to be billed separately from the retainer. (*Id.* 2). Moreover, Neighbors admits in his affidavit that he sought payment of the costs from HySky, in addition to Highland. (Neighbors Aff. ¶ 7).

It is true that the engagement letter, which was addressed to Highland, provides for the reimbursement of costs. But plaintiffs have not shown that the engagement letter has any application to the costs incurred in 2008, particularly since 2008 was well after the due diligence period, to which the engagement letter purportedly related, and it is undisputed that HySky retained plaintiffs to work for it in 2008. Moreover, the engagement letter itself does not appear to constitute a contract at all, as previously discussed.

Neighbors' purported oral agreement with Chura, as portrayed in the current record, is of no avail to plaintiffs with respect to the costs. There is no indication that this alleged agreement included the costs. There are also, of course, genuine issues of material fact whether it even constitutes an enforceable contract.

For this and the other reasons discussed, plaintiffs have failed to show that they are entitled to summary judgment on their claim for costs against Highland. It will therefore be recommended that their motion be denied with respect to this claim. The court having found that plaintiffs' motion fails with respect to their other claims as well, the motion should be denied in its entirety.

25

## HIGHLAND'S MOTION FOR CONTINUANCE

As an alternative to denying plaintiffs' motion for partial summary judgment, Highland requests that this court continue proceedings on the motion to permit further development of the record pursuant to Rule 56(f). As the foregoing analysis indicates, the record is already sufficiently developed to enable the court to determine that the partial summary judgment plaintiffs seek should be denied. It will accordingly be recommended that Highland's motion for continuance be denied.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that plaintiffs' motion for partial summary judgment (D.E. 21) be DENIED, plaintiffs' evidentiary objections be DENIED ON THE MERITS or AS MOOT, and Highland's motion for continuance pursuant to Rule 56(f) be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this _16_ day of August 2010.

James E. Gates
United States Magistrate

26