IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No. 5:09-CV-00352-F

| | |
|---|---|
| THE PATRICK NEIGHBORS LAW FIRM, P.C. and PATRICK E. NEIGHBORS,<br><br> Plaintiffs,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P., and HYSKY COMMUNICATIONS, L.L.C.,<br><br> Defendants. | DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT |

Defendant Highland Capital Management, L.P. ("Highland") submits this memorandum in support of its motion for summary judgment, subject to its request for leave filed contemporaneously with its summary judgment motion and this memorandum.

## INTRODUCTION

Plaintiffs' claims are based largely upon an engagement letter that is little more than an agreement to agree at some future date. That letter, authored by Plaintiffs, concerns "an agreement to perform future legal services on an as needed basis <u>as we may mutually agree</u>. . . ." (D.E. 21-3) (emphasis added). Under North Carolina law, there was no valid contract with specific, enforceable terms between Plaintiffs and Highland. *See Boyce v. Mahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) ("a contract, or offer to contract, leaving material portions open for future agreement is nugatory and void for indefiniteness."). Indeed, based upon their own representations, including to the court in the HySky bankruptcy proceeding, Plaintiffs performed services for HySky, not Highland. Furthermore, Plaintiffs cannot circumvent the failings of their

contract claims by repackaging them as tort claims. "[B]ecause the 'crux of this matter is and always has been a contract dispute,' [plaintiff] may only seek relief based on the underlying contractual relationship." *Int'l Designer Transitions v. Faus Group, Inc.*, 663 F. Supp. 2d 432, 447 (M.D.N.C. 2009) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998)).

Based on the evidence already before the Court in connection with Plaintiffs' own motion, as well as the other docket entries cited herein, the Court should grant summary judgment on each of Plaintiffs' claims.

## BACKGROUND

### I. CASE HISTORY

Plaintiffs filed their original complaint on 20 June 2009 in Wake County Superior Court. (*See* Compl. (D.E.1-1 at 5)). On 6 August 2009, Highland and HySky removed it to this court on the basis of the court's diversity jurisdiction under 28 U.S.C. § 1332. (*See* Removal Notice (D.E. 1)). Highland and HySky filed their answers on 7 August 2009 (D.E. 4) and 10 August 2009 (D.E. 5), respectively.

On 10 August 2009, Plaintiffs filed their amended complaint (D.E.11). On 28 August 2009, the court stayed the case (D.E. 12) with respect to HySky as a result of the bankruptcy petition filed by HySky in the Northern District of Texas on 13 August 2009 (*see* HySky Mot. to Stay (D.E.10)). On 23 September 2009, Highland filed its answer (D.E.18) to the amended complaint.

On 7 May 2010, Plaintiffs filed their second amended complaint (D.E.36). Highland filed its answer (D.E. 38) on 1 June 2010. Plaintiffs moved for partial summary judgment on 7 January 2010. United States Magistrate Judge A. Gates filed his Memorandum and

2

Recommendation ("M&R") on 16 August 2010, which analyzed and recommended denial of Plaintiffs' summary judgment motion. (D.E. 39 at 26). Plaintiffs' objections (D.E. 40) to the M&R were overruled on 24 September, 2010. Discovery closed on 27 September 2010.

## II. FACTUAL BACKGROUND

In this action, Plaintiffs seek recovery of legal fees in the amount of $131,530.00 allegedly incurred from December 2006 to September 2007 for performance of due diligence work in connection with an asset purchase by HySky. They also seek costs of $3,300.95 allegedly incurred from January 2008 to December 2008 in connection with services they provided to HySky as general counsel.

According to Plaintiffs, the Neighbors Firm is a professional corporation created under the laws of North Carolina with its principal place of business in Wake County. (Compl. ¶ 1). They also allege that Patrick Neighbors is a duly licensed North Carolina attorney, and employee and owner of the Neighbors Firm. (*Id.* ¶ 2; Neighbors Aff. (D.E. 21-2) ¶ 1).

Highland is a limited liability partnership in the business of capital and asset management created under the laws of Delaware and having its principal place of business in Dallas, Texas. (Compl. ¶ 3; Am. Ans. ¶ 3). HySky is a limited liability company in the business of antenna communications created under the laws of Delaware and having its principal place of business in Atlanta, Georgia until 31 December 2008 and thereafter in Dallas, Texas. (Compl. ¶ 4; Am. Ans. ¶ 4). According to Highland, at all times relevant to this action, Highland was HySky's sole equity holder. (Callan Aff. (D.E. 26-1) ¶ 2).

Plaintiffs allege that they were retained by Highland on or about 29 November 2006 to provide legal due diligence services in conjunction with an asset purchase by HySky. (Compl. ¶ 6). HySky had contracted with Equitas, LLC ("Equitas") for an option to purchase the assets of

3

Case 5:09-cv-00352-F   Document 55   Filed 12/19/10   Page 3 of 18

Equitas subject to a satisfactory due diligence review. (Compl. ¶ 6; Am. Ans. ¶ 6). The agreement was formalized in an Option to Purchase Assets Agreement dated 27 December 2006. (*Id.*). According to Plaintiffs, HySky was at the time a prospectively highly capitalized start-up that, upon acquisition of the assets, would become a going concern. (Compl. ¶¶ 5, 7). Plaintiffs allege that they and Highland agreed that Plaintiffs would defer billing for the due diligence legal fees until after the option was exercised. (Compl. ¶ 7).

The Equitas option was not exercised for almost a year, until 10 December 2007. (Compl. ¶ 7; Am. Ans. ¶ 7). Plaintiffs allege that they were paid for the period October to December 2007 (Compl. ¶ 8). But they allege they were not paid fees for the remainder of the due diligence period, December 2006 through September 2007, totaling $131,530.00, despite repeated demand. (*Id.* ¶¶ 10-13; Neighbors Aff. ¶ 6).

On 1 January 2008, Plaintiffs were engaged to provide general counsel legal services to HySky. (Compl. ¶ 9; Am. Ans. ¶ 9). Plaintiffs provided these services for all of 2008. (Compl. ¶ 9; Am. Ans. ¶ 9). Plaintiffs do not allege nonpayment of the fees for this work. They have not, however, been paid $3,300.95 for related costs they allegedly incurred, despite repeated demand. (Compl. ¶ 14; Am. Ans. ¶ 14). An offer was made, by both defendants according to Plaintiffs and by HySky according to Highland, to pay these alleged costs, but only in return for release of all of Plaintiffs' claims, against both defendants according to Plaintiffs and against Hysky alone according to Highland. (Compl. ¶ 14; Am. Ans. ¶ 14). Plaintiffs' relationship with HySky terminated on 1 April 2009. (Compl. ¶ 12; Am. Ans. ¶ 12).

4

## ARGUMENT

### I. STANDARD OF REVIEW.

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claims on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 233-23.

For purposes of this motion, Highland assumes that North Carolina law applies.

### II. PLAINTIFFS' BREACH OF CONTRACT CLAIMS.

Plaintiffs' alleged contract lacks the terms, including mutual consideration, necessary for a legally binding contract. Under North Carolina law, "[t]he essential elements for a breach of contract claim are the existence of a valid contract and a breach of the terms of that contract." *Eli Research, Inc. v. United Comm'n Group, LLC*, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004) (citing *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 843 (2000)). "A valid contract exists when there is an agreement based on a meeting of the minds and sufficient consideration." *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07CV 169, 2008 WL 4005738, at

5

*3 (M.D.N.C. 25 Aug. 2008) (citing *Creech ex rel. Creech v. Melnick*, 147 N.C. App. 471, 477, 556 S.E.2d 587, 591 (2001)) (Exh. 1). "In addition to setting forth its terms with the requisite level of certainty, to be enforceable a contract must contain an expression of mutual assent. That is, a manifestation of intent wherein 'it is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense." *Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 400 (M.D.N.C. 2003) (quoting *Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961)).

Plaintiffs did not have a contract with Highland. Plaintiffs have previously relied, in part, on a so-called engagement letter, dated 29 November 2006, from Plaintiffs to Highland's general counsel, Kevin Ciavarra (D.E. 21-3) (the "engagement letter") in support of their contract claims, and that is the date on which Plaintiffs allege they were retained. (Compl. ¶ 6). On its face, however, the engagement letter demonstrates that there was no enforceable contract. The engagement letter, authored by Plaintiffs, states, in pertinent part, that "this correspondence [is] to serve as an engagement letter between this law firm and Highland regarding an agreement to perform future legal services on an as needed basis <u>as we may mutually agree</u>, in writing or orally." (D.E. 21-3) (emphasis added). It goes on to state that "there shall be no attorney or legal fees charged for worked [*sic*] performed by this firm on your behalf <u>until we shall mutually agree</u>." (*Id.*) (emphasis added).

It is well established that "a contract, or offer to contract, leaving material portions open for future agreement is nugatory and void for indefiniteness." *Boyce v. Mahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974). "A party may not enforce a purported contract that omits the 'nature and extent of the service to be performed, . . . and the person to whom it is being

6

rendered, and the compensation to be paid' . . . ." *Media Network, Inc. v. Mullen Advertising, Inc.*, Nos. 05 CVS 7255, 15428, 2007 WL 2570175, at *9 (N.C. Bus. Ct. 19 Jan. 2007) (quoting *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 180 S.E.2d 735, 737 (1921)) (Exh. 2).

The engagement letter is little more than an agreement to agree at some future time and not an enforceable contract with definite terms. It does not specify the nature of the legal services to be rendered, the party to which they are to be rendered, or the compensation to be paid. Instead, as indicated, the engagement letter speaks of performance of legal services "as we may mutually agree." (D.E. 21-3). The engagement letter provides for no payment, and no other consideration to Plaintiffs, unless and until a mutual agreement is reached. (*Id.*)

Plaintiff also has relied on a purported oral agreement with Chura regarding certain specific terms. But, as the Court has noted, Plaintiffs have represented that "*[a]fter* Mr. Chura and plaintiffs agreed to these terms, plaintiffs memorialized their engagement with Mr. Kevin Ciavarra, corporate counsel for defendant Highland (Exhibit 3 [*i.e.*, the engagement letter])." Pltfs.' Mem. In Supp. (D.E. 21) at p. 3, ¶8) (emphasis added). Taking Plaintiffs at their word, the arrangement memorialized in the engagement letter (prepared by Plaintiffs) does not constitute a contract and is no more than an unenforceable agreement to agree.

Furthermore, Plaintiffs' subsequent statements confirm that there was no agreement. In his September 10, 2007 email to Chura, Mr. Neighbors states: "I was looking over the historical document, and it appears that I only had *an engagement letter* with Highland, rather than an *agreement*. Thus, I have created a new agreement . . . ." (D.E. 26-15) (emphasis added). Thus, Plaintiffs themselves have acknowledged that they lacked a contract with Highland for the due diligence services performed.

7

And, contrary to their litigation position in this action, Plaintiffs have repeatedly taken the position that *HySky* owes Plaintiffs the fees for the legal services performed and that *HySky*, and not Highland, entered into a contract with Plaintiffs. (*See* HySky Board Minutes for Feb. 5, 2009 (D.E. 26-4) ("Mr. Neighbors asked the Board to consider his firm's outstanding, unpaid legal fees that resulted from performing due diligence on the Company's behalf from December 2006 to September, 2007. Mr. Prillick asked for documentation as to initial agreement and services performed. Mr. McQueary indicated that such evidence should be provided within thirty days . . . . RESOLVED, Mr. Neighbors will provide evidence of initial agreement and documentation of hourly services performed during the applicable time period within thirty days."); Bankruptcy Claim (D.E. 26-27) (Plaintiffs' "Proof of Claim" as to unpaid fees filed in HySky's bankruptcy action); Plaintiffs' Response to HySky's Objection to Claim (D.E. 26-8) ¶ 13 ("As indicated, in November 2006, [Plaintiffs] contractually agreed with HySky to provide due diligence legal services."); Transcript of January 29, 2010 Bankruptcy Hearing (D.E. 26-29) at pp. 2-3 (Neighbors' cross-examination of a witness and later argument wherein he refers to the disputed contract as "an agreement between the Neighbors law firm and a then-acting Manager of the Board of Managers [of HySky], Mr. N[i]les Chura")). *See also* draft agreement for legal services that Neighbors submitted to Chura (D.E. 26-15), which shows, *inter alia*, that Plaintiffs were providing legal services "to HySky and not Highland as Plaintiffs contend.

For those reasons, Highland submits that the Court should grant summary judgment against Plaintiffs on their first (attorney's fees) and sixth (costs) causes of action.

### III. PLAINTIFFS' *QUANTUM MERUIT* AND IMPLIED CONTRACT CLAIMS.

*Quantum meruit* serves as an equitable remedy to prevent unjust enrichment when there is no express contract. *Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414-15

8

(1998). It is based upon a quasi-contract or contract implied in law. *Id.* Thus, while Plaintiffs identify *quantum meruit* and implied contract as separate claims, they are in fact components of a single claim.

To recover in *quantum meruit*, a plaintiff must show that (1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously. *Scott v. United Carolina Bank*, 130 N.C. App. 426, 429, 503 S.E.2d 149, 152 (1998). "*Quantum meruit* claims require a showing that both parties understood that services were rendered with the expectation of payment." *Scott*, 130 N.C. App. at 429, 503 S.E.2d at 152. Moreover, "the focus, in the *quantum meruit* context, is on whether there is an express contract *on the subject matter at issue* and not on whether there was a contract between the parties." *Ron Medlin Constr. v. Harris*, 681 S.E.2d 807, 810 (N.C. App. 2009) (quoting *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962)) ("Plaintiffs mistakenly argue that only an express contract between the parties precludes a claim for *quantum meruit*. In fact, this Court has held: 'It is a well established principle that an express contract precludes an implied contract *with reference to the same matter*. . . . There cannot be an express and implied contract *for the same thing* existing at the same time.'" (Emphases in original.)).

As discussed *supra* at p. 8, Plaintiffs have repeatedly taken the position that the services were performed for HySky and that HySky entered into the contract and owes Plaintiffs the fees for the legal services performed, not Highland. At the 5 February 2009 HySky board meeting, Neighbors "addressed the issue of release of funds from the general and due diligence escrow accounts" and "asked the Board to consider his firm's outstanding, unpaid legal fees that resulted from performing due diligence on the Company's behalf from December, 2006 to September,

9

2007." (HySky Board Minutes (D.E. 26-4) at 1). On 4 December 2009, Plaintiffs asserted a claim on the unpaid fees in HySky's bankruptcy action. (Bankr. Claim (D.E. 26-27)). In a hearing before the Bankruptcy Court, Neighbors referred to this contract as "an agreement between the Neighbors law firm and a then-acting Manager of HySky [Chura]." (Bankr. Transcript (D.E. 26-29) 2)

The foregoing evidence establishes through Plaintiffs' own representations that any contract was with HySky, which precludes their *quantum meruit* claims against Highland, *see* Whitfield, 348 N.C. at 42, 497 S.E.2d at 415, and that the services were rendered for HySky, not Highland. Plaintiffs should not be able to disavow the position they have repeatedly taken because HySky has gone bankrupt or as a matter of litigation convenience.

Plaintiffs' own records further confirm that they rendered the legal services to HySky. The work underlying Plaintiffs' fee claim was on an asset purchase agreement by HySky. Plaintiffs' billing records reflect the provision of the legal services to HySky, not Highland. They are labeled "Hours for Hysky." (Billing Records (D.E. 21-5) at 1). In addition, the billing entries appear related almost solely to services for HySky. While "Highland" is referenced once in the records, "HySky" is referenced more than 100 times. (*Id.*). Thus, the services were being rendered to HySky, not Highland.

There are also numerous documents in which Mr. Neighbors is held out to be acting as general counsel to HySky by himself and others. (*See* HySky Confidential Business Plan (D.E. 26-18) (19 April 2007) at 16 (identifying Neighbors as "Proposed Acting General Counsel"); HySky Confidential Business Plan (D.E. 26-19) (20 May 2007) at 17 (same); 12 Nov. 2007 email from Neighbors to Chura (D.E. 26-20) at 1 (acknowledging his "acting general counsel

10

duties for HySky")). The foregoing documentary evidence and Plaintiffs' own admissions establish beyond dispute that Plaintiffs' services were rendered to HySky, not Highland.

An additional basis for summary judgment arises from the necessary proof of damages. The measure of recovery under *quantum meruit* is the reasonable value of the services provided. *Whitfield, P.A.*, 348 N.C. at 42, 497 S.E.2d at 414-15. Plaintiffs did not submit contemporaneous billing to HySky, much less to Highland. Nor have Plaintiffs designated an expert witness as to the value of the alleged services at issue. *See Resolution Trust Corp. v. Golden Key Ltd., Partnership*, 1993 WL 128573 (4th Cir. 1993) (Exh. 3) (citing *J.R. Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 403 S.E.2d 334, 335 (1991) ("Ordinarily, expert testimony will be required to assist the fact finder.")). Plaintiffs' "billing records" generated after-the-fact for HySky is no substitute for contemporaneous billing or a qualified expert as to the reasonable value of the services provided. Under the circumstances, any attempt to establish the reasonable value of alleged services rendered by Plaintiffs would be little more than self-serving speculation and legally insufficient.

Thus, Highland submits that the Court should grant summary judgment against Plaintiffs on their eighth (*quantum meruit*) and ninth (implied or quasi-contract) causes of action.

## IV. PLAINTIFFS' CLAIMS FOR FRAUD AND PUNITIVE DAMAGES.

The essential elements of fraud under North Carolina law include:

> "(1) false representation or concealment of a material fact,
> (2) reasonably calculated to deceive
> (3) made with the intent to deceive,
> (4) which does in fact deceive,
> (5) resulting in damages to the injured party."

*Int'l Designer Transitions v. Faus Group, Inc.*, 663 F. Supp. 2d 432, 442 (M.D.N.C. 2009) (quoting *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568-69, 374 S.E.2d

11

385 (1988). "[C]laims arising out of a commercial relationship, which are, at bottom, essentially claims for breach of contract, do not generally give rise to tort liability." *Id.* at 439 (citing *Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 332 (4th Cir. 1994) and *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345-47 (4th Cir. 1998)).

Here, as the basis for their fraud claim, Plaintiffs have alleged the following:

> 20. Alternatively, but in no way in lieu of Plaintiffs' First Cause of Action, Defendant Highland represented to Plaintiffs that Plaintiffs would be entitled to payment for the legal services rendered during the due diligence period after the purchase option of HySky was executed, which occurred on or about December 10, 2007.

(Compl. at 5, ¶ 20.) Despite the attempt to repackage the dispute, Plaintiffs' fraud claim "is really one for a simple breach of contract, and is therefore not actionable as an independent tort." *Int'l Designer*, 663 F. Supp. 2d at 445. The discussion on this score in *Int'l Designer* is directly applicable to Plaintiffs' fraud claim:

> As the Fourth Circuit has previously found, in order to be separately actionable, this kind of allegedly tortuous conduct, arising out of an alleged breach of contract, must be "identifiable" as an independent tort, and must be accompanied by sufficient aggravating circumstances. *Strum*, 15 F.3d at 330-31. In other words, the alleged conduct must involve something more than merely failing to carry out pre-existing contractual obligations, and it must also have an element of malice, recklessness or some similarly culpable state of mind in order to justify an award of punitive damages. *Id.*

*Int'l Designer*, 663 F. Supp. 2d at 445. Thus, in *Int'l Designer*, "because the 'crux of this matter is and always has been a contract dispute,' [plaintiff] may only seek relief based on the underlying contractual relationship." *Id.* (quoting *Broussard*, 155 F.3d at 346. At the fundamental level, Plaintiffs' case is akin to those in *Strum* and *Broussard*, where the Fourth Circuit "found a similar 'attempt by the plaintiff to manufacture a tort dispute out of what is, at

12

bottom, a simple breach of contract claim' to be 'inconsistent both with North Carolina law and sound commercial practice.'" *Broussard*, 155 F.3d at 346 (quoting *Strum*, 15 F.3d at 329). The crux of Plaintiffs claims here is a contract dispute, no matter the effort to recast the dispute as a tort claim. There is no "distinct" and "identifiable" tort, and Plaintiffs' fraud and punitive damages claims should be dismissed. *Id.*; *see also Carolina Power & Light Co. v. Aspect Software, Inc.*, No. 5:08CV0049BO, 2009 WL 256332, at *2-3 (E.D.N.C., decided Feb. 3, 2009) (dismissing fraud and negligent misrepresentation claims on this basis) (Exh. 4); *Mecklenburg County v. Nortel Government Solutions Inc.*, No. 3:07CV00320, 2008 WL 906319 (W.D.N.C., decided April 1, 2008) (same; "Allowing the County to recover a purely economic loss in tort would eviscerate the North Carolina distinction between contract and tort law") (Exh. 5).

Furthermore, there can be no reasonable reliance here. Plaintiffs' own engagement letter states that there shall be no attorney or legal fees charged for worked [*sic*] performed by this firm on your behalf <u>until we shall mutually agree</u>." (D.E. 21-3) (emphasis added). Plaintiffs purport to rely on an oral agreement with Niles Chura but admit in briefing that "*[a]fter* Mr. Chura and plaintiffs agreed to these terms, plaintiffs memorialized their engagement with Mr. Kevin Ciavarra, corporate counsel for defendant Highland (Exhibit 3 [*i.e.*, the engagement letter])." Pltfs.' Mem. In Supp. (D.E. 21) at p. 3, ¶8) (emphasis added). Plaintiffs' own engagement letter eviscerates reliance on any purported oral agreement. Furthermore, Plaintiffs' subsequent statements establish his lack of reasonable reliance. In his September 10, 2007 email to Chura, Neighbors states: "I was looking over the historical document, and it appears that I only had *an engagement letter* with Highland, rather than an *agreement*. Thus, I have created a new agreement . . . ." (D.E. 26-14) (emphasis added).

13

Therefore, the Court should grant summary judgment against Plaintiffs on their second (fraud) and third (punitive damages) causes of action.

## V. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM.

In their Second Amended Complaint, Plaintiffs asserted a claim for negligent misrepresentation. To prove a claim for negligent misrepresentation, a plaintiff must show that: "(1) [defendant] failed to exercise due care in obtaining and communicating information to [plaintiff] that [plaintiff] was justified in expecting; and (2) [plaintiff] was injured by its justifiable reliance on said information." *Int'l Designer*, 663 F. Supp. 2d at 447 (citing *Davidson & Jones, Inc. v. New Hanover County*, 41 N.C. App. 661, 225 S.E.2d 580 (1979)).

> Moreover, similar to its claim for fraudulent misrepresentation, discussed above, Plaintiff must also show that its negligent misrepresentation claim is actually an independent, identifiable tort, separate and apart from its contract claims." *See, e.g., N.C. Mut. Life Ins. Co. v. McKinley Fin. Servs., Inc.*, No. 1:03CV00911, 2005 WL 3527050, at *8-9 (M.D.N.C. Dec. 22, 2005) (Tilley, C.J.) (dismissing negligent misrepresentation claim based on *Strum* and *Broussard* because claims did not arise from "distinct" circumstances) (some level of aggravation must be shown, but it need not necessarily be malice or recklessness) (citations omitted).

*Int'l Designer*, 663 F. Supp. 2d at 447. Here, as with Plaintiffs' fraud claim, their claim from negligent misrepresentation is not a "distinct" and "identifiable" tort, separate and apart from their contract claims. *Id*; *see also* discussion of *Broussard, Strum* and progeny, *supra*, at 12-13.

Furthermore, just as there can be no reasonable reliance with respect to Plaintiffs' fraud claim, so too there can be no justifiable reliance as to the negligent misrepresentation claim. *See supra.*, at 13.

Therefore, the Court should grant summary judgment against Plaintiffs on their tenth cause of action.

## VI. PLAINTIFFS' "STATUTORY FRAUD" CLAIMS.

Plaintiffs' claims under the Uniform Fraudulent Transfer Act require an underlying debt owed by HySky to Plaintiffs. N.C. Gen. Stat. §§ 39-23.4 & 39-23.5. The court in HySky's bankruptcy proceedings determined that HySky did not owe Plaintiffs anything. (Bankruptcy Order disallowing Plaintiffs' claims (D.E. 48-5)). These very claims were asserted against HySky in the bankruptcy proceeding; Plaintiffs submitted a copy of their complaint in this action as part of their claim against HySky. (D.E. 48-2). Following confirmation of the bankruptcy plan (*see* HySky Memo. re Bankruptcy (D.E. 48) at p. 3, ¶ 9, and p. 7), these claims cannot be pursued. 11 U.S.C. § 1141(a) (all parties are bound by the terms of a confirmed bankruptcy plan). Because the Bankruptcy Court has determined there is no underlying debt owed by HySky to Plaintiffs, there can be no claim that HySky fraudulently conveyed to Highland funds that it owed to Plaintiffs.

Moreover, Plaintiffs lack standing even to assert these claims, which were the property of the bankruptcy estate. The bankruptcy trustee, not Plaintiffs, must bring such claims. *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 2004).

Therefore, the Court should grant summary judgment against Plaintiffs on their fourth ("statutory fraud") and fifth (related punitive damages) causes of action.

## VII. PLAINTIFFS' CLAIM FOR INTERFERENCE WITH CONTRACT.

In their Second Amended Complaint, Plaintiffs also asserted a claim for interference with contract, their eleventh cause of action. The elements of this claim are:

> "First, that a valid contract existed between plaintiff and a third person.... Second, that the outsider had knowledge of the plaintiffs' contract with the third person. Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. Fourth, that in so doing the outsider acted

15

without justification. Fifth, that the outsider's act caused the
plaintiff actual damages."

*Broussard*, 155 F.3d at 351 (ellipse in original) (quoting *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C.216, 367 S.E.2d 647, 649-50 (1988)).

As a matter of law, Plaintiffs' claim fails on the fourth prong at the very least – that "the outsider acted without justification." Under North Carolina law, the owner of company's shares is protected by a form of qualified privilege for "non-outsiders." *Broussard*, 155 F.3d at 351. "In the context of interference with contract by an insider ... the element that the defendant acted without justification is potentially vitiated by the defendant's corporate position. Officers, directors, shareholders, and other corporate fiduciaries have a qualified privilege to interfere with contractual relations between the corporation and a third party." *Id.* (ellipse in original) (quotation marks omitted). Here, it is undisputed that Highland was a shareholder of HySky and entitled to this protection.

For these reasons, the Court should dismiss Plaintiffs' eleventh cause of action.

## CONCLUSION

Based on the foregoing reasons and authorities, Highland submits that the Court should grant summary judgment against Plaintiffs on all of their claims.

Respectfully submitted this 19th day of December, 2010,

                /s/ F. Hill Allen
                F. Hill Allen
                N. C. State Bar No. 18884
                **THARRINGTON SMITH, L.L.P.**
                209 Fayetteville Street
                Post Office Box 1151
                Raleigh, North Carolina 27602
                Telephone:   (919) 821-4711
                Facsimile:    (919) 829-1583
                Email:          hallen@tharringtonsmith.com

Isaac D. Leventon
*By Notice of Special Appearance*
**HIGHLAND CAPITAL MANAGEMENT, L.P.**
Two Galleria Tower
13455 Noel Road, Suite 800
Dallas, Texas 75240
Telephone: (972) 419-4482
Facsimile: (972) 628-4147
Email: ileventon@hcmlp.com

**ATTORNEYS FOR DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| THE PATRICK NEIGHBORS LAW FIRM, <br> P.C. and PATRICK E. NEIGHBORS, <br><br> Plaintiffs, <br><br> vs. <br><br> HIGHLAND CAPITAL MANAGEMENT, L.P., <br> and HYSKY COMMUNICATIONS, L.L.C., <br><br> Defendants. | File No. 5:09-CV-00352-F |

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2010, I electronically filed the foregoing Memorandum In Support Of Defendant Highland Capital Management, L.P.'s Motion For Summary Judgment with the Court using the CM/ECF system.

The CM/ECF system will send notification of such filing to all parties of record.

/s/ F. Hill Allen
F. Hill Allen
N. C. State Bar No. 18884
**THARRINGTON SMITH, L.L.P.**
209 Fayetteville Street
Post Office Box 1151
Raleigh, North Carolina 27602
Telephone: (919) 821-4711
Facsimile: (919) 829-1583
Email: hallen@tharringtonsmith.com

18

Case 5:09-cv-00352-F  Document 55  Filed 12/19/10  Page 18 of 18